WELLS, Justice,
dissenting.
I dissent from the decision to stay rule 3.852 until June 1998.. I would deny the motion without prejudice to file a motion for relief from the time periods of rule 3.852 in the trial court which is responsible for a defendant’s postconvietion proceedings. I would state in the order that, within fifteen days of counsel’s undertaking the representation of a listed defendant, counsel may file for relief of the time periods of rule 3.852. The trial judge should consider this motion as part of a time line for progressing the proceeding to a final order in accord with time standards provided in section 924.055, Florida Statutes (1997).
The real and immediate issue which this Court needs to deal with concerns representation for capital postconvietion defendants. Many of the defendants listed in the present motion of the Capital Collateral Regional Counsel (CCRC) have been without representation for more than three years. It is wrong for this Court to avoid dealing with this problem for another five months, which I believe will be the effect of the majority’s delaying until June the implementation of rule 3.852. I have no reason to believe we will be in a better position in June to deal with this problem than we are now. No progress has been demonstrated since our previous order, entered more than three months ago, on this motion.
As part of this Court’s supervision of Florida’s court system, we require the chief judge of each circuit to submit quarterly reports concerning the status of postconvietion capital cases. An examination of these quarterly reports reveals the turmoil that posteonviction representation issues are causing in every judicial circuit. My in-depth analysis of these reports every quarter has convinced me that the turmoil will continue as long as the postconvietion representation issue is unresolved. This is true not only for the listed defendants but also for defendants whose postconvietion motions have already been filed. In most instances, those motions have stalled, and the circuit courts can report no progress whatsoever.
*915 Moreover, this Court presides over a court system which has had its sentences so delayed in execution that capital defendants have been maintained and are continuing to be on death row for twenty years and more. As I pointed out in a dissenting opinion in Swafford v. State, 679 So.2d 736 (Fla.1996), these death row inmates reside constantly in six-by-nine-foot cells except for two-hour exercise intervals twice a week and limited weekend visitation. Death row incarceration was not intended to last for these unconscionable time periods, and I believe it is the role of this Court to find a way to make these time periods reasonable.
I do not accept the position that this Court has no immediate role in solving the posteon-vietion representation problem or that our involvement would constitute “micromanaging” the three CCRC agencies. I believe that we not only have a role in posteonviction proceedings but that at present we have no more important or immediate responsibility. Not dealing with the representation issue is a prescription for capital posteonviction eases to continue as in the past and for them to drag on for another twenty years. I will not be a silent party to such continued delay. Nor do I accept the contention that the problems concerning capital posteonviction representation are too difficult to solve; I believe these problems can be solved in a straightforward way if this Court and the Commission on the Administration of Justice in Capital Cases (the Commission) work together diligently to develop a concrete, realistic plan. I will outline here the beginning parts of a plan in an effort to foster discussion.
First, this Court should order the CCRCs to undertake the representation of capital posteonviction defendants by filing notices of active representation in the circuit courts no later .than March 1, 1998. The order should alternatively permit a CCRC to notify this Court and the Commission by February 15, 1998, that it is actively working to contract with private counsel for representation of defendants whom the CCRC cannot represent. We should require these negotiations to be concluded and counsel to be in place by March 15, 1998. This timetable would allow the CCRCs to work with the legislature during its 1998 session to obtain funding for this representation. Under one possible scenario, the CCRCs could provide investigative staff for the private counsel. With a positive effort, such details could be worked out. When I asked the CCRCs at oral argument whether this approach was feasible, they responded that it could not be done. My response is that it should be tried, with the advice and counsel of the Commission.
Second, I would request that the Commission submit to this Court its recommendations for a plan and timetable for representation of each capital posteonviction defendant. We should take advantage of the ideas of these commissioners and we should affirmatively seek their advice concerning posteon-viction representation, to be expressed in a statement to us and in an open discussion with us.
Third, I would ask the Commission to submit to this Court any recommendation the Commission has or can develop for our implementation of the time periods for postcon-viction capital cases set out by the legislature in section 924,055, Florida Statutes (1997). In section 27.7091, Florida Statutes (1997), the legislature requested that this Court adopt the time periods by rule. I would respect the legislature’s request and adopt as a rule the time periods of section 924.055. With the advice and assistance of the Commission, I would then implement a plan requiring these time standards to be met in all posteonviction cases in Florida courts no later than December 31; 2001. To successfully attack this problem, we need a concrete plan with benchmarks for measuring progress.
Fourth, I would appoint a committee composed of six trial judges who have experience in presiding over capital posteonviction proceedings. I would ask them: (1) to study the representation problem and advise this Court as to a plan to meet our time standards; (2) to draft rules of procedure for processing capital posteonviction cases; and (3) to work on the resolution of issues concerning public records production in these proceedings.
*916 Fifth, we must acknowledge that implementation of such a plan will not succeed unless the problem of public records production under chapter 119, Florida Statutes (1997), in capital postconvietion cases is also resolved. Identifying documents to be produced and determining the method of production are two issues at the core of substantial delays. These delays have resulted in clearly excessive expenditures of financial resources and judicial labor. The CCRCs’ methods of seeking public records production and the government agencies’ responses to them often result in frustration of the proceedings rather than production of material records. We attempted to address this problem by enacting Florida Rule of Criminal Procedure 3.852, which is the rule subject to the majority’s extension in the present ease. Our rule has not been fully effectuated because of this Court’s granting of requested delays. However, in cases involving requests for public records, the CCRCs assert that the rule compels them to file a great many notices to produce records in a great many state agencies. In some cases, circuit judges report receiving up to 100 motions to compel production of public records. This procedure inhibits successful records production, causes more delays in the circuit courts, and obviously is not working as intended by our rule or, in my view, within the intent of chapter 119.
To address this problem, I believe the legislature should amend chapter 119 and chapter 27, the CCRC law, to specify exactly what records are subject to production under chapter 119 in a records request pursuant to a rule 3.851 proceeding and which records may be requested using resources appropriated for postconvietion capital representation. ■ The agencies possessing such records should send them to a single repository at a stated time subsequent to notification to the agencies of a defendant’s death sentence. The Attorney General should be responsible for notifying agencies and ensuring that such records are timely sent to the repository. Judge Miner, as a member of the Commission, has addressed this problem, and I hope that legislators will consider his recommendations in adopting legislation. I believe that input from a committee of trial judges also would be beneficial.
I am very concerned about the motions and accompanying positions by the CCRCs in respect to the issue which we are now deciding. I certainly recognize that the individuals who lead these agencies are new to their positions and face formidable tasks. I appreciate their service. Besides facing the expected transitional hurdles, the CCRC leaders have had difficulty replacing several lawyers who have resigned. However, my concern is that the present motions and arguments by the CCRCs appear to represent the same mind-set that resulted in the failure of their predecessor, the office of the Capital Collateral Representative (CCR).
These motions demonstrate to me that the CCRCs presently are so beset with internal conflict as to allocation of resources that each regional agency has decided that it can spend resources only on eases in which there are scheduled executions. This problem is exemplified by the following statement from the corrected motion filed by the CCRC for the Northern Region (CCC-NR) concerning the ease of Judy Buenoano, who is currently under a death warrant signed in December by Governor Chiles.
Ms. Buenoano’s cases comprise over 5000 pages of record on appeal. Her case files constitute over 150 boxes of material provided to this office by her former volunteer lawyers. In order to fulfill its ethical and legal obligation to Ms. Buenoano, the CCC-NR has assigned four (4) attorneys to her case including all three (3) lead attorneys. These four (4) attorneys must work almost exclusively between now and March 30, 1998 representing Ms. Buenoa-no. Two (2) investigators have been assigned to the case and because neither has warrant litigation experience, the investigator supervisor must also dedicate time to the case. These investigators will have to work on this case nearly exclusively. Under these circumstances, the CCC-NR hopes it can provide Ms. Buenoano with a professional level of representation. How *917 ever, it may become necessary to assign additional attorneys to the case.
(Footnote omitted.)
Included in the same motion is a schedule and request for extensions of this Court’s rules in respect to twenty-one of the sixty-three cases for which CCC-NR has responsibility. Examples of the requested extensions are: Gary Whitton, whose rehearing was denied in this Court on February 14, 1995, will not have a postconvietion motion filed until March 1, 1999; Curtis Windom, whose rehearing was denied in this Court on June 29, 1995, will not have a postconvietion motion filed until April 19, 1999; Danny Rolling, whose rehearing was denied June 12, 1997, will not have a postconvietion motion filed until December 4, 2001. With the granting of these extensions, each Of the twenty-one inmates with an extension will live on death row for a period spanning almost four years after the date of the rehearing denial and before the postconvietion adjudication process even begins. Nevertheless,, CCC-NR says it is compelled to expend almost all of its resources and time on the case of Judy Buenoano, who is facing a death warrant but whose postconvietion motions have already been adjudicated twice.
For more than twenty years, leaders in Florida government have worked diligently to provide a sensible solution by creating a governmental agency to provide capital post-conviction representation. Justice Overton has worked on this solution since 1975. Other participants have included the Governor’s legal counsel, legislative leaders, and members of the Commission, which was chaired by former Justice Parker Lee McDonald. The result has been the creation of CCR, an agency unique among the states authorizing capital punishment, and its successor agency, CCRC. The legislature has funded this agency to ensure that postconvietion cases are effectively and timely adjudicated. However, if we cannot resolve the present problems with representation and devise a workable plan to meet the time standards of section 924.055 by no later than December 31, 2001, I believe that the legislature will have to seriously consider dissolving the CCRCs and finding another approach. This dissolution would be problematic, of course, and would force a different postconvietion process. That process would be time-centered, as it was before the creation of CCR, upon the Governor’s signing of death warrants and scheduling of executions. Although this would not be an orderly process, neither is the present CCRC process.
We must always acknowledge that capital postconvietion representation is not a constitutional right but rather a statutory right provided in Florida by legislative grace for the benefit of defendants and to assist the courts in carrying out the postconvietion process, I hope , that this Court and the Commission can work together to keep CCRC alive and functioning as the legislature intended. However, I believe that the continued existence of CCRC in 1998 requires proof through deeds that the agency approach to capital postconvietion representation can work. The CCRC agencies are not likely to survive if we do not begin until June to deal with the problem of representation of each defendant.
APPENDIX
[[Image here]]
*918 [[Image here]]